1   **LAQUER URBAN CLIFFORD & HODGE LLP**
    Brian Ray Hodge, State Bar No. 90488
2   Email:  hodge@luch.com
    Marija Kristich Decker, State Bar No. 207387
3   Email:  decker@luch.com
    Michael Y. Jung, State Bar No. 245260
4   Email:  jung@luch.com
    225 South Lake Avenue, Suite 200
5   Pasadena, California 91101-3030
    Telephone: (626) 449-1882 / Facsimile:  (626) 449-1958
6
    Counsel for Plaintiffs, Trustees of the Southern
7   California Pipe Trades Health and Welfare Trust Fund, et al.

8                 **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10

11  TRUSTEES OF THE SOUTHERN          CASE NO.: CV13-01339 GAF (SPx)
    CALIFORNIA PIPE TRADES HEALTH
12  AND WELFARE TRUST FUND;           ASSIGNED TO THE HONORABLE
    TRUSTEES OF THE SOUTHERN          GARY ALLEN FEESS
13  CALIFORNIA PIPE TRADES
    PENSIONERS AND SURVIVING          **[PROPOSED] FINDINGS OF FACT
14  SPOUSES HEALTH FUND;              AND CONCLUSIONS OF LAW**
    TRUSTEES OF THE SOUTHERN
15  CALIFORNIA PIPE TRADES
    RETIREMENT TRUST FUND;
16  TRUSTEES OF THE SOUTHERN          TRIAL DATE
    CALIFORNIA PIPE TRADES            Date:    April 29, 2014
17  DEFINED CONTRIBUTION TRUST        Time:   8:30 a.m.
    FUND; TRUSTEES OF THE             Crtm:   740
18  SOUTHERN CALIFORNIA PIPE          255 East Temple Street
    TRADES VACATION AND HOLIDAY       Los Angeles, California 90012
19  TRUST FUND; TRUSTEES OF THE
    SOUTHERN CALIFORNIA PIPE
20  TRADES CHRISTMAS BONUS FUND;
    TRUSTEES OF THE APPRENTICE
21  AND JOURNEYMAN TRAINING
    TRUST FUND; TRUSTEES OF THE
22  PLUMBERS AND PIPEFITTERS
    NATIONAL PENSION FUND; and
23  TRUSTEES OF THE
    INTERNATIONAL TRAINING FUND,

24                       Plaintiffs,

25              v.

26  C.H. STONE PLUMBING CO., INC., a
    California corporation doing business as
27  "C.H. STONE"; DAVID KENNETH
    DEAN, an individual.
28                       Defendants.



1    The above-captioned case came on regularly for trial on May 14, 2014, before
2    the above-captioned Court, the Honorable Gary Allen Feess, United States District
3    Judge, presiding.  Brian Ray Hodge and Michael Y. Jung of Laquer, Urban, Clifford
4    & Hodge, LLP appeared as counsel for plaintiffs, Trustees of the Southern California
5    Pipe Trades Health and Welfare Trust Fund, Trustees of the Southern California Pipe
6    Trades Pensioners and Surviving Spouses Health Fund, Trustees of the Southern
7    California Pipe Trades Retirement Trust Fund, Trustees of the Southern California
8    Pipe Trades Defined Contribution Trust Fund, Trustees of the Southern California
9    Pipe Trades Vacation and Holiday Trust Fund, Trustees of the Southern California
10   Pipe Trades Christmas Bonus Fund, Trustees of the Apprentice and Journeyman
11   Training Trust Fund, Trustees of the Plumbers and Pipefitters National Pension Fund,
12   and Trustees of the International Training Fund (collectively the "Trustees").  David
13   B. Simpson and Theodore S. Khachaturian of Wolflick & Simpson appeared as
14   counsel for defendant David Kenneth Dean.  The trial was conducted pursuant to the
15   Pre-Trial Conference Order, the direct testimony of witnesses presented in
16   declarations filed with the Court, the documentary and oral evidence presented at trial,
17   and the oral arguments by counsel.  The case having been submitted to the Court for
18   decision, the Court now makes the following Findings of Fact and Conclusions of
19   Law.

## FINDINGS OF FACT

20

21   1.    Any finding of fact which is also a conclusion of law shall be deemed to
22   be a finding of a fact and also a conclusion of law.

23   2.    Plaintiffs are Trustees of collectively bargained fringe benefit trusts (the
24   "Trusts").  [Final Pretrial Conference Order, Docket No. 77 ("FPCO"), 5:7-21.]  The
25   Trusts are express trusts created pursuant to written agreements and declarations of
26   trust (hereinafter "Trust Agreements") between the Southern California Pipe Trades
27   District Council No. 16 of the United Association of Journeymen and Apprentices of

28

PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
824356.DOC

the Plumbing and Pipefitting Industry ( "District Council No. 16") and various employer associations in the plumbing and pipefitting industry in Southern California, or between District Council No. 16, and other councils of the United Association of Plumbers and Pipefitters, and various employer associations across the United States. [FPCO, 5:7-21.]  The Trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to Section 302(c)(5) of the Labor-Management Relations Act of 1947, as amended, ("LMRA") [29 U.S.C. § 186(c)(5).] [FPCO, 5:7-21.]

3.    District Council No. 16 is a labor organization representing employees in the plumbing, pipefitting and landscaping industry in Southern California, and a labor organization representing employees in an industry affecting commerce within the meaning of § 301(a) of the LMRA [29 U.S.C. § 185(a).] [FPCO, 5:22-26.]

4.    At all times material herein, defendant C.H. Stone Plumbing Co., Inc., (hereinafter "C.H. Stone") was a corporation duly organized under the laws of the State of California with its principal place of business located in Baldwin Park, California. [FPCO, 6:1-4.]

5.    At all times material herein, defendant David Kenneth Dean (hereinafter "Defendant Dean") has been an individual residing in Whittier, California.  [FPCO, 6:27-28.]

6.    Defendant Dean was the Chief Executive Officer and sole shareholder of C.H. Stone from August 10, 2011, through at least October 2012. [Exs. 27, 59, 61, and 67.] Defendant Dean admits he was the sole shareholder of C.H. Stone from at least September 2011 through October 2012. [Defendant's Direct Testimony By Declaration of David K. Dean, Docket No. 90 ("Decl. Dean"), ¶7; Exs. 59 and 61.]

7.    C.H. Stone became a member of the California Plumbing and Mechanical Contractors Association ("CPMCA"), a multiemployer association, in June 1997 and remained a member until at least October 2012.  [Declaration of Charles Martin,



PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
824356.DOC

Docket No. 88 ("Decl. Martin"), ¶6; FPCO, 6:7-13.]  At all times material herein, C.H. Stone delegated to CPMCA the authority to bargain collectively District Council No. 16 on behalf of C.H. Stone.  [Decl. Martin, ¶8.]

8.     As a member of the CPMCA bargaining unit, C.H. Stone agreed to be bound by the terms and conditions of the written Master Agreement negotiated between District Council 16 and the CPMCA as the Master Agreement was in effect from time to time. [FPCO, 6:7-13.]

9.     Section C.5 of the Master Agreement provides that each of the Trust Agreements is incorporated into the Master Agreement.  [Exs. 1 and 2; Declaration of Angela Panomchai, Docket No. 91 ("Decl. Panomchai"), ¶7.]

10.     Under Section C.5.3 of the Master Agreement, by virtue of being bound to the Master Agreement, C.H. Stone agreed to be bound by each of the Trust Agreements establishing the Local Trusts, and agreed to irrevocably designate and appoint the Employer designated Trustees as its agent with authority to amend the Trust Agreements and bind C.H. Stone to those amendments.    [Exs. 1 and 2; Decl. Panomchai, ¶7.]

11.     Article VI, Section 6, of each of the Trust Agreements establishing the Southern California Pipe Trades Health and Welfare Trust, Southern California Pipe Trades Pensioners and Surviving Spouses Health Fund, Southern California Pipe Trades Retirement Fund Trust Agreement, Southern California Pipe Trades Defined Contribution Fund, Southern California Pipe Trades Vacation and Holiday Trust, Southern California Pipe Trades Christmas Fund Trust Agreement, Southern California Pipe Trades Apprentice and Journeyman Training Trust, and the International Training Fund provides that the Trustees, or a committee appointed by the Trustees, may adopt such rules and procedures concerning payments, audits, liquidated damages, and the collection of delinquent contributions, as they determine necessary. [Exs. 3-9 and 11; Decl. Panomchai, ¶¶ 7-8.]

824356.DOC

12. Article VI, Section 5, of the Trust Agreement establishing the Plumbers and Pipefitters National Pension Fund provides that the Trustees may adopt rules and regulations concerning the collection of delinquent contributions. [Ex. 10; Decl. Panomchai, ¶7.]

13. Pursuant to the authority granted in the Trust Agreements, at all times material herein the various Boards of Trustees have delegated responsibility for collecting delinquent fringe benefit contributions to a subcommittee called the Delinquency Committee. [Decl. Panomchai, ¶7.]

14. Since ~~prior to~~ *at least* 2002, the Delinquency Committee has established a written Joint Collection Policy & Procedures ("Collection Procedures"), which has been modified from time to time. [Decl. Panomchai, ¶7; Exs. 12 and 13.] *(2005 + 2011 Collection Policy of Procedures.)*

15. Pursuant to Sections C.3.4-3.5 of the Master Agreement, and as restated in the Collection Procedures, contributions are due on the tenth (10th) day of each month and are measured by the hours worked by covered employees during the prior month. [Exs. 1, 2, 12 and 13; Decl. Panomchai, ¶16.] Contributions are considered delinquent if not post-marked or delivered by the fifteenth (15th) day of that month. [Exs. 1, 2, 12 and 13; Decl. Panomchai, ¶17; Declaration of Jesus Gallindo, Docket No. 84 ("Decl. Gallindo"), ¶6.] The due date for payment of contributions has not been altered or modified at any time relevant herein. [Decl. Panomchai, ¶21; Ex. 22.]

16. The Trusts did not have a practice of deeming contributions paid after the fifteenth (15th) of the succeeding month to be timely. [Decl. Panomchai, ¶21; Ex. 22; Decl. Gallindo, ¶8.] Defendant Dean received a copy of the written policy stating that contributions were due by the tenth (10th) of the succeeding month and delinquent if not paid by the fifteenth (15th) of the succeeding month. [Decl. Panomchai, ¶22; Exs. 12 and 35.] The Trusts' administrative employees also notified Defendant Dean in June 2011 that contributions were delinquent if not paid by the fifteenth (15th) of the succeeding month. [Ex. 36; Decl. Panomchai, ¶22.] ~~Even if the Trusts did have a~~ *Dean was in fact notified of delinquencies on June 17, 2011 (see Exhibit 36) and advised of penalties that were being imposed as a result. (Cite.)*



*The trusts never waived the requirement of timely payment.*

~~practice of deeming contributions received after the fifteenth (15th) of the succeeding month timely, since Defendant Dean had knowledge of the written requirements he could not reasonably rely on any contrary conduct of the parties to establish a later due date for contributions owed under the Master Agreement. [Decl. Panomchai, ¶ 22.]~~

17.     Under the terms of the Master Agreement, C.H. Stone promised to pay fringe benefit contributions to the Trusts for each hour worked by its employees performing any work covered by the Master Agreement.   [Exs. 1 and 2; Decl. Panomchai, ¶9.]

18.     During the time period of November 1, 2007, through at least September 30, 2012, C.H. Stone engaged in plumbing and pipefitting work as either a general contractor or subcontractor. [FPCO, 6:25-27.]

19.     C.H. Stone had the primary responsibility to calculate and report the amount of fringe benefit contributions due each month, and this is done without any supervision by the Trusts. [Decl. Panomchai, ¶9; FPCO, 7:1-3.]

20.     Based on the unpaid monthly reports submitted to the Trusts by C.H. Stone for work performed in November 2011 (the "November Reports"), C.H. Stone owes the Trusts $85,503.64 for fringe benefit contributions.  [FPCO, 7:11-16; Ex. 21.] Those contributions became due and owing no later than December 10, 2011. Additional amounts for liquidated damages and interest became due and owing by C.H. Stone to the Trusts under the Master Agreement, Collection Procedures and Trust Agreements when those contributions became "delinquent" on December 15, 2011. [Decl. Panomchai, ¶¶ 9 and 17; Exs. 1, 2 and 3-12.]

21.     In or around July 2011, Miller Kaplan Arase, LLP was retained by the Trustees to perform an audit of the records of C.H. Stone covering the time period from November 1, 2007, through July 31, 2011. [Declaration of Jeffrey Goss, Docket No. 86 ("Decl. Goss"), ¶4.]  The audit sought to determine the amount of contributions and other amounts owed by C.H. Stone, if any, to the Trusts. [Decl. Goss, ¶4.]

22.     Based upon a review of a number of C.H. Stone's business records, including monthly contribution reports, payroll registers, cash disbursement journals, certified payroll records, and various tax documents, the Master Agreement, all applicable wage and fringe benefit rate sheets, the Collection Procedures, and the trust agreements for the various Trusts, C.H. Stone owes the Trustees $2,321.20 (the "Audit Claim") for fringe benefit contributions based on work performed during the time period covered by the audit.  [Decl. Goss, ¶7; Ex. 24.]  Defendant Dean received the Audit Claim before December 20, 2011. [Ex. 25; Decl. Dean, ¶27.]

23.     Pursuant to the Master Agreement and Collection Procedures, the unpaid contributions owed to the Trusts discovered in the audit became due and owing by C.H. Stone to the Trusts no later than the tenth (10th) day of each respective month following the month during which the measuring work was performed, and have remained due and owing since then. [Decl. Panomchai, ¶¶ 17 and 21.]

24.     Contributions in the total amount of $87,824.84, based on C.H. Stone's unpaid November Reports and the contributions owed on the Audit Claim, remain unpaid. [Decl. Panomchai, ¶¶ 10 and 12; Exs. 21 and 24.]

25.     Section C.4.3 of the Master Agreement requires delinquent employers to pay all reasonable attorneys' fees, court costs, interest, liquidated damages, and other expenses incurred in the enforcing of collection of delinquent contributions.  [Exs. 1 and 2; Decl. Panomchai, ¶¶ 7 and 15.]  Similarly, the Collection Procedures and the Trust Agreements require delinquent employers to pay the Trusts all attorneys' fees, court costs, interest, liquidated damages and audit costs. [Decl. Panomchai, ¶¶ 12 and 13; Exs. 3-12.]

26.     Pursuant to the Collection Procedures, C.H. Stone is required to pay the Trusts interest at the rate of eighteen percent (18%) per annum on all unpaid fringe benefit contributions from their respective due dates until paid. [Decl. Panomchai, ¶13; Ex. 12.]

PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
824356.DOC

27.     Pursuant to the Collection Procedures, a delinquent employer is required to pay liquidated damages, assessed at ten percent (10%) of unpaid or untimely contributions totaling, or twenty percent (20%) of unpaid or untimely contributions if a lawsuit is filed to collect those contributions.  [Decl. Panomchai, ¶12; Ex. 12.] Pursuant to the Collection Procedures, C.H. Stone is required to pay the Trusts liquidated damages assessed at 20% of the unpaid contributions. [Decl. Panomchai, ¶12; Ex. 12.]

28.     Pursuant to the Master Agreement, Collection Procedures and Trust Agreements, C.H. Stone owes the Trusts $17,564.96 for liquidated damages.  [Decl. Panomchai, ¶12; Exs. 1-13.]

29.     Pursuant to the Master Agreement, Collection Procedures and Trust Agreements, C.H. Stone owes the Trusts $40,316.37 for interest accruing on the unpaid contributions from their respective due dates until June 9, 2014.  [Decl. Panomchai, ¶13; Exs. 1-13.]     Interest at the rate of eighteen percent (18%) per annum on the $87,824.84 owed for contributions accrues at the daily rate of $43.31.

30.     The Trusts paid the auditors $19,411.00 for the audit of C.H. Stone. [Decl. Goss, ¶9.] Pursuant to the Master Agreement, Collection Procedures and Trust Agreements, C.H. Stone owes the Trusts $19,411.00 for audit costs.

31.     Pursuant to the terms of the Master Agreement, Collection Procedures and Trust Agreements, and 29 U.S.C. § 1132(g)(2), the Trusts are entitled to an award of reasonable attorneys' fees and costs incurred in collecting the unpaid contributions owed by C.H. Stone. [Exs. 1-13; Decl. Panomchai, ¶15.]

32.     In November 2011, Defendant Dean, on behalf of C.H. Stone, claimed that C.H. Stone was entitled to a refund under the Master Agreement for overpaid contributions on private works projects.  [Ex. 41.]  Other employers made similar claims for refunds. [Declaration of Mike Layton, Docket No. 87 ("Decl. Layton"), ¶10; Oral trial testimony of Mike Layton.]

33.     Pursuant to Section B.3 of the Master Agreement in effect from July 1, 2011, through June 30, 2014, a Joint Arbitration Board ("JAB") was formed consisting of five employer representatives appointed by the CPMCA and five labor representatives appointed by District Council 16.  [Ex. 2; Decl. Layton, ¶¶ 6-7.] Section B.3.4 of the Master Agreement permits the JAB to delegate all of its powers and duties to a Joint Subcommittee consisting of at least one member appointed by District Council 16 and one member appointed by the CPMCA.  [Ex. 2; Decl. Layton, ¶¶ 6-7.]

34.     Section B.3.9 of the Master Agreement provides that the signatory employers, which included C.H. Stone, and District Council 16 accept the authority of the JAB to decide ~~overall~~ questions regarding any provision of the Master Agreement which relates in any way to the Trusts, including but not limited to the making of contributions to the Trusts.  [Exs. 1-2; Decl. Martin, ¶16.]

35.     Pursuant to the terms of the Master Agreement, a subcommittee of the JAB considered ~~the issue~~ of whether signatory employers could receive a refund for contributions paid on private works projects that had a lower contribution rate ~~so that~~ *that had been negotiated between District Council 16 and the CPMCA* ~~signatory employers could successfully bid against non-signatory employers.~~  [Decl. Layton, ¶¶ 10-11; Decl. Martin, ¶21; Ex. 53.]  On November 15, 2011, that subcommittee of the JAB, consisting of Mike Layton, the Assistant Business Manager of District Council 16, and Charles Martin, Executive Director of the CPMCA, issued its ruling interpreting the Master Agreement to provide that signatory employers who paid the usual rate for fringe benefit contributions could not retroactively receive the benefit of the lower rates for private works projects already bid and completed.  [Decl. Layton, ¶¶ 10-11; Decl. Martin, ¶21; Ex. 53.]

36.     C.H. Stone and Defendant Dean received a copy of the November 15, 2011, JAB subcommittee ruling.  [Decl. Dean, ¶31.]  Neither Defendant Dean nor C.H. Stone appealed the November 15, 2011, JAB ruling.  [Decl. Layton, ¶12; Oral trial



824356.DOC

1    testimony of Mike Layton.]   No employer appealed the November 15 2011, JAB
2    subcommittee ruling. [Decl. Layton, ¶12; Oral trial testimony of Mike Layton.]   Under
3    the Master Agreement, as interpreted by the JAB, C.H. Stone is not entitled to any
4    refund of contributions. [Decl. Layton, ¶¶ 10-11; Decl. Martin, ¶21; Ex. 53.]

5          37.   On December 20, 2011, Defendant Dean caused C.H. Stone to file a
6    voluntary petition for bankruptcy in the United States Bankruptcy Court for the Central
7    District of California pursuant to Chapter 11 of the Bankruptcy Code. [Decl. Dean, ¶¶
8    35-36; Ex. 58.]   At that time, C.H. Stone had sufficient assets to pay all its secured
9    creditors and priority creditors, including all amounts owed to the Trusts. [FPCO, 7:
10   24-26; Ex. 58; Decl. Dean, ¶¶ 43-44.] *As the prior discussion indicates,*
11   *the November 2011 contributions which were past due were*
12         38.   The Trustees filed a proof of claim in C.H. Stone's bankruptcy
13   proceeding on January 20, 2012. [Declaration of Michael Y. Jung, Docket No. 83
     ("Decl. Jung"), ¶5; Ex. 60.] *not paid prior to this filing.*

14         39.   During the bankruptcy, C.H. Stone continued to operate as a debtor in
15   possession until it ceased operations in October 2012. [Decl. Dean, ¶¶ 45 and 48; Exs.
16   61, 64, 65 and 67.]   C.H. Stone continued to perform covered work and to report and
17   pay fringe benefit contributions to the Trusts' for work performed during the months of
18   December 2011 through September 2012. [Decl. Panomchai, ¶11.]   In the bankruptcy
19   proceedings, C.H. Stone was a "debtor-in-possession" and no trustee was appointed to
20   manage the bankruptcy estate.   [Decl. Dean, ¶¶ 45 and 48; Exs. 61, 64, 65 and 67.]
21   During this time Defendant Dean remained the President, Chief Executive Officer and
22   sole shareholder of C.H. Stone. [Exs. 59, 61, 64, 65 and 67.]

23         40.   On November 6, 2012, the United States Bankruptcy Court for the
24   Central District of California dismissed C.H. Stone's Chapter 11 petition. [Ex. 69.]

25         41.   Article II, Section 2, of the Trust Agreement for the Southern California
26   Pipe Trades Health and Welfare Trust Fund, Article II, Section 2, of the Trust
27   Agreement for the Southern California Pipe Trades Pensioners and Surviving Spouses

28

PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

824356.DOC

1   Health Fund, Article II, Section 2, of the Trust Agreement for the Southern California
2   Pipe Trades Retirement Trust Fund, Article II, Section 2 of the Trust Agreement for the
3   Southern California Pipe Trades Defined Contribution Trust Fund, Article II, Section 2,
4   of the Trust Agreement for the Southern California Pipe Trades Vacation and Holiday
5   Trust Fund, Article II, Section 2, of the Trust Agreement for the Southern California
6   Pipe Trades Christmas Bonus Fund, and Article II, Section 2, of the International
7   Training Fund Trust Agreement each provides as follows: "The assets of this Trust
8   Fund consist of (1) the sums of money that have been or will be paid or which are due
9   and owing to the Fund by the Employers as required by Collective Bargaining
10  Agreements ... [and] all other Contributions and payments to or due and owing to the
11  Trustees from any source to the extent permitted by law ... ." [Exs. 3-8 and 11.]

12      42.   Article II, Section 2, of the Trust Agreement establishing the National
13  Pension Fund similarly defines trust assets as including "such sums of money as have
14  been or shall be paid to the Pension fund by the Employer as contributions required by
15  Collective Bargaining Agreements or signed stipulations...." [Ex. 10.]

16      43.   Section 1.03 of the Trust Agreement for the Apprentice and Journeyman
17  Training Trust Fund provides as follows: "The Trust Fund shall consist of Employer
18  contributions, interest and all income or returns of any kind whatsoever therefrom,
19  an[d] all income or returns of any kind whatsoever therefrom, both received and
20  accrued ... ." [Ex. 9.]

21      44.   Defendant Dean had the authority to change C.H. Stone's procedures for
22  the reporting and payment of fringe benefit contributions to the Trusts.  [Defendant
23  Dean's Response to Plaintiff's Separate Statement, Docket No. 43, 22:6-9.]   From
24  November 2008 through October 2012, Defendant Dean was the individual who
25  exercised discretion and authority to determine if and when C.H. Stone would pay
26  fringe benefit contributions to the Trusts.  [Ex. 27; Defendant Dean's Response to
27  Plaintiff's Separate Statement, Docket No. 43, 27:20-23.]

28

824356.DOC   PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

45.     On August 10, 2011, Defendant Dean executed a settlement agreement with the Trusts covering unpaid contributions and related delinquencies based on C.H. Stone's monthly reports for the months of April 2011 through June 2011.  [Ex. 27; Decl. Dean, ¶22.]  In the settlement agreement Defendant Dean admitted that he had the discretion to determine if and when C.H. Stone would pay fringe benefit contributions to the Trusts and acknowledged joint and several liability for those delinquencies.  [Ex. 27.]

46.     Defendant Dean had the authority to sign checks on C.H. Stone's corporate bank account.  [Decl. Dean, ¶¶ 10, 13-15; Ex. 52.]  Defendant Dean signed the checks to the Trusts for the payment of fringe benefit contributions.  [Decl. Dean, ¶16; Ex. 52.]  At all times material here since at least August 10, 2011, Defendant Dean did not need any co-signer for any of C.H. Stone's checks, including the checks used to pay contributions to the Trusts.  [Decl. Dean, ¶¶ 13 and 16.]

47.     Defendant Dean's duties and responsibilities as CEO of C.H. Stone remained the same after executing the August 2011 settlement agreement with the Trusts until C.H. Stone went out of business in or about October 2012.  [Defendant Dean's Response to Plaintiff's Separate Statement, Docket No. 43, 27:20-23.]

48.     Defendant Dean made the decision not to pay the fringe benefit contributions that were due and owing on December 10, 2011, for the November Reports, as well as the amounts discovered in the Audit.  [Decl. Dean, ¶19; Defendant Dean's Response to Plaintiff's Separate Statement, Docket No. 43, 28:3-12.]

49.     Defendant Dean was a fiduciary with respect to the Trusts' assets consisting of the unpaid contributions, liquidated damages, interest and audit costs owed by C.H. Stone pursuant to the Master Agreement, Collection Procedures and Trust Agreements.

50.     By November 2011, Defendant Dean knew, or should have known, that he was a fiduciary with respect to the unpaid contributions and other amounts owed by



PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
824356.DOC

C.H. Stone to the Trusts pursuant to the Master Agreement, Collection Procedures and Trust Agreements. [Exs. 27, 72.]

51.     Defendant Dean breached his fiduciary duties to the Trusts when he did not cause C.H. Stone to pay those amounts to the Trusts, but rather diverted assets to pay other creditors and to pay his salary and his wife's salary. [Decl. Dean, ¶¶ 37 and 42; Ex. 59.]  Rather than cause C.H. Stone to pay the amounts owed to the Trusts, Defendant Dean caused C.H. Stone to pay other creditors, and on December 20, 2011, Defendant Dean caused C.H. Stone to file for bankruptcy and transferred assets that should have been used to pay the Trusts to C.H. Stone's bankruptcy estate.  [Decl. Dean, ¶¶ 35-37 and 42.]   As the sole shareholder of C.H. Stone, Defendant Dean personally benefited from the transfer of assets to C.H. Stone's bankruptcy estate.  [Ex. 59; Decl. Dean, ¶42.]  In addition, Defendant Dean and his wife continued to draw a salary from C.H. Stone's bankruptcy estate.  [Ex. 59.]

## CONCLUSIONS OF LAW

1.     Any conclusion of law which is also a finding of fact shall be deemed to be a conclusion of law and also a finding of fact.

2.     This Court has jurisdiction over this matter pursuant to Section 502(e) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. § 1132(e)], and Section 301(a) of the LMRA [29 U.S.C. § 185(a).]

3.     Venue is proper pursuant to Section 502(e)(2) of ERISA [U.S.C. § 1132(e)(2)], and Section 301(a) of the LMRA [29 U.S.C. § 185(a)], in that this is the district in which the Trusts are administered, the signatory union maintains its principal offices and where the relevant acts took place.

4.     At all times material herein, C.H. Stone was bound to the terms and provisions of the Master Agreement, the incorporated Trust Agreements and the Collection Procedures.



824356.DOC                    PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

5.      Section 515 of ERISA [29 U.S.C. § 1145], and the Master Agreement expressly require C.H. Stone to pay fringe benefit contributions to the Trusts for all hours worked by each employee performing work covered by the Master Agreement.

6.      C.H. Stone's November Reports submitted to the Trusts constitute admissions relating to the amount of contributions owed by C.H. Stone to the Trustees. Fed. R. Civ. P. 801(d)(2); <u>Gaspard & Co. v. Government of Guam</u>, 427 F.2d 276 (9th Cir. 1970).

7.      Pursuant to the Master Agreement, Collections Procedures, Trust Agreements and Sections 515 and 502(g)(2) of ERISA [29 U. S.C. § 1145, 502(g)(2)], C.H. Stone owes the Trusts $87,824.84 for unpaid contributions, $17,564.96 for liquidated damages, $40,316.37 for interest accruing through June 9, 2014, and $19,411.00 for audit fees.

8.      An employer who takes on the obligation to "self report" monthly contributions to a trust fund covered by ERISA "undertakes a fiduciary obligation which must be faithfully and punctiliously observed." <u>Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund v. Jumbo Markets</u>, 906 F.2d 1371 (9th Cir. 1990).

9.      Employee contributions to a 401K plan become plan assets no later than the fifteenth (15th) of the month following the month in which the contributions were withheld from the paychecks.   29 C.F.R. §2510.3-102(b)(1); <u>Nelson v. EG&G Energy Measurements Group, Inc.</u>, 37 F.3d 1384, 1391 (9th Cir. 1994.

10.     Unforwarded employee contributions (vacation fund contributions and defined benefit plan (401K) contributions) are plan assets no later than the date they can be segregated from the employer's general assets. 29 C.F.R. §2510.3-102(a)(1), (2); <u>Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund v. Temecula Mechanical, Inc.</u>, ("<u>Temecula Mechanical</u>") 438 F.Supp.2d 1156, 1161 n. 1 (C.D. Cal. 2006).



824356.DOC

PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

11.     The Master Agreement unambiguously provides that contributions are due on the tenth (10th) day ~~of tenth day~~ of each respective month following the month during which the measuring work was performed, and are "delinquent" if not paid by the fifteenth (15th) day of that month.  Even if C.H. Stone had a history of submitting fringe benefit contribution payments to the Trusts on an untimely basis, parties cannot modify orally or by conduct, the written provisions of collective bargaining agreements.  Maxwell v. Lucky Construction Company, Inc., 710 F.2d 1395, 1398 (9th Cir. 1983); Kemmis v. McGoldrick, 706 F.2d 993, 996 (9th Cir. 1983) *and did not waive the right to demand timely payment*

12.     The Trustees may not be estopped from asserting that contributions were delinquent if not paid by the fifteenth (15th) of the succeeding month because Defendant Dean knew the language in the Master Agreement and Collection Procedures stating that contributions were due on the tenth and delinquent if not paid by the fifteenth (15th).  Audit Services, Inc. v. Rolfson, 641 F.2d 757, 762 (9th Cir. 1981).

13.     Pursuant to the express language of the Master Agreement and Collections Procedures, contributions in the amount of $85,503.64 owed by C.H. Stone based on the November Reports became assets of the Trusts once they became due and owing on December 10, 2011.

14.     Pursuant to the express language of the Master Agreement and Collections Procedures, the unpaid contributions included in the Audit Claim became assets of the Trusts once they became due and owing on the tenth (10th) day of each respective month following the month during which the measuring work was performed, and remained assets of the Trusts in November 2011 when Defendant Dean received notice of the Audit Claim.

15.     Under Section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)], an individual is a fiduciary to the extent he or she controls *any* assets of an ERISA fund. "One is a fiduciary to the extent he exercises *any* discretionary authority or control."

1   Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103

2   L.Ed.2d 80 (1989).  The definition of fiduciary is liberally construed in the Ninth

3   Circuit.  Arizona State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 720

4   (9th Cir. 1997).  "[T]he Ninth Circuit has long held that corporate officers can be

5   personally liable as fiduciaries based solely on 'their conduct and authority with

6   respect to ERISA plans' even if that same conduct was done on behalf of the

7   corporate entity itself.'"  Alameda County of Electrical Industry Service Corporation

8   v. Gatejen Consolidated Industries, Inc., No. C-13-00241 JCS, 2013 WL 4081310 at

9   *13 (N.D. Cal. June 27, 2013) [quoting Kayes v. Pacific Lumber Co., 51 F.3d 1449,

10   1459 (9th Cir.1995)].

11          16.    The Court ~~agrees with the holdings in~~ *follows the reasoning of* Temecula Mechanical *which held* that unpaid

12   contributions are trust fund assets under the same agreements at issue here, and that

13   the individual who determines whether and when to pay those contributions is a

14   fiduciary with respect to those amounts.  Defendant Dean is a fiduciary under ERISA

15   with respect to the unpaid contributions owed by C.H. Stone based on the November

16   Reports and the Audit Claim.

17          17.    Defendant Dean breached his fiduciary duty under ERISA by failing to

18   pay, or to cause C.H. Stone to pay, the contributions owed to the Trusts based on its

19   November Reports once those contributions became due on December 10, 2011.  In re

20   Fahey, 482 B.R. 678, 694 (B.A.P. 1st Cir.2012); Bos v. Trustees of the Carpenters

21   Health and Welfare Trust Fund for California, No. 2:12-cv-02026-MCE, 2013 WL

22   943520 (N.D. Cal. Mar. 11, 2013); Trustees of Detroit Carpenters Fringe Benefit

23   Funds v. Nordstrom, 901 F.Supp.2d 934, 942 (E.D. Mich. 2012); Trustees of Plumbers

24   and Pipefitters Local No. 333 Health and Welfare Fund v. Grindall & White, Inc., No.

25   12-10977, 2013 WL 5450273, at *3 (E.D. Mich. Sept. 30, 2013).

26          18.    Defendant Dean also engaged in a prohibited transaction under Section

27   406(a)(1)(D) and (b)(1) of ERISA [29 U.S.C. § 1106(a)(1)(D) and (b)(1)].  NYSA-

28

PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
824356.DOC

1   ILA Medical & Clinical Serv. Fund. V. Catucci, 60 F.Supp.2d 194, 204 (S.D.N.Y.

2   1999).   It is a prohibited transaction for a fiduciary not to pay contributions, but

3   instead transfer assets for the benefit of a corporation in which the fiduciary owns a

4   substantial equity interest.   Pension Benefit Guaranty Corporation v. Solmsen, 671

5   F.Supp. 938, 945 (E.D.N.Y. 1987); Alameda County of Electrical Industry Service

6   Corporation v. Gatejen Consolidated Industries, Inc., No. C-13-00241 JCS, 2013 WL

7   4081310 at *13 (N.D. Cal. June 27, 2013); Temecula Mechanical, *supra*, 438

8   F.Supp.2d at 1161.

9       19.   Defendant Dean breached his fiduciary duty under ERISA, and engaged

10  in a prohibited transaction under Section 406 of ERISA [29 U.S.C. § 1106], by failing

11  to pay the contributions included in the Audit when said contributions became due,

12  and when the Trusts gave him notice of the Audit Claim in November 2011.

13      20.   Defendant Dean breached his fiduciary duty under ERISA, and engaged

14  in a prohibited transaction under Section 406 of ERISA [29 U.S.C. § 1106], by

15  voluntarily filing a petition for bankruptcy under Chapter 11 of the Bankruptcy Code

16  and transferring C.H. Stone's assets to the bankruptcy estate for his own personal

17  benefit when C.H. Stone had sufficient assets to pay the contributions, as well as all

18  to pay all secured creditors.

19      21.   Even if Defendant Dean were compelled to file a bankruptcy petition,

20  the contributions owed based on the November Reports were a pre-petition

21  obligation, and could have been paid in the normal course of business during the 90-

22  day preference period and no creditor could have objected.   11 U.S.C. § 547(c)(2);

23  Union Bank v. Wolas, 502 U.S. 151, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991.

24      22.   As a debtor-in-possession, under 11 U.S.C. § 1113 Defendant Dean had

25  to comply with C.H. Stone's collective bargaining agreement during the pendency of

26  C.H. Stone bankruptcy proceedings.   Even if the unpaid contributions owed based on

27  the November Reports became due after December 20, 2011, Defendant Dean was



28

PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

824356.DOC

1    required to cause C.H. Stone to pay all contributions that became due after he filed

2    his petition.  Teamsters Industrial Security Fund v. World Sales, Inc., 183 B.R. 872

3    (B.A.P. 9th Cir. 1995); Pacific Far East Line, Inc. v. Pacific Maritime Association,

4    713 F.2d 476 (9th Cir. 1983).

5         23.    The Trustees took reasonable measures to protect their claim for the

6    unpaid contributions based on C.H. Stone's monthly reports for November 2011 and

7    the Audit Claim by filing a proof of claim on January 20, 2012, in accordance with

8    the Bankruptcy Code.  Even assuming, *arguendo*, that the Trustees breached their

9    fiduciary duties to collect contributions owed by C.H. Stone, co-fiduciary liability

10   under Section 505 of ERISA [29 U.S.C. § 1106] is joint and several, and does not

11   operate to excuse Defendant Dean's breach of his fiduciary duty.  In re Masters Mates

12   & Pilots Pension Plan & IRAP Litigation, 957 F.2d 1020, 1027-28 (2nd Cir. 1992).

13        24.    Where the parties to a collective bargaining agreement have set up a

14   grievance procedure for resolving questions of contract interpretation, a court may

15   not interfere and substitute its own judgment.  Well established national labor policy

16   requires courts to defer to the collective bargaining parties' agreed way to settle such

17   disputes.  Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173,

18   886 F.2d 1200 (9th Cir. 1989).  Parties to a collective bargaining agreement may

19   agree to resolve disputes over the agreement's language by submitting the matter to a

20   committee of labor and management representatives.  Waggoner v. C & D Pipeline

21   Co., 601 F.2d 456 (9th Cir. 1979).  Such a ruling by the collective bargaining parties

22   is controlling.  *Id.*  See, also, General Drivers, Warehousemen and Helpers, Local 89

23   v. Riss and Company, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); Humphrey

24   v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Burke v. Lenihan, 606

25   F.2d 840 (9th Cir. 1979); Kemmis v. McGoldrick, 706 F.2d 993, 997 (9th Cir. 1983).

26        25.    Defendant Dean is not entitled to offset his liability to the Trustees by

27   any alleged overpayment by C.H. Stone.  C.H. Stone is bound by the JAB ruling.

28

1    Defendant Dean is liable for the amounts owed by C.H. Stone under the Master

2    Agreement.  Defendant Dean cannot raise any defense that C.H. Stone does not have,

3    and C.H. Stone has none.  The doctrine of non-mutual offensive collateral estoppel

4    raised by Defendant Dean is inapplicable.  Moreover, even if the Court were to apply

5    traditional collateral estoppel principles to resolve the issue, the result would be no

6    different.  Defendant Dean was in privity with C.H. Stone with respect to the JAB

7    proceedings.  Wolfson v. Brammer, 616 F.3d 1045, 1064 (9th Cir. 2010).

8           26.    Defendant Dean's liability for breach of fiduciary duty is joint and

9    several with C.H. Stone's liability as a delinquent employer.  Alameda County of

10   Electrical Industry Service Corporation v. Gatejen Consolidated Industries, Inc., No.

11   C-13-00241 JCS, 2013 WL 4081310 at *16 (N.D. Cal. June 27, 2013); Trustees v.

12   Riverview Construction, No. C-12-03514 PJH (DMR), 2013 WL 2147418, at *7

13   (N.D. Cal. Apr. 17, 2013); Trustees of Detroit Carpenters Fringe Benefit Funds v.

14   Nordstrom, supra, 901 F.Supp.2d at 944.  Furthermore, since an award of unpaid

15   contributions, interest, liquidated damages and attorneys' fees are mandatory against

16   C.H. Stone under Section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], Defendant

17   Dean is also liable for those damages as they are amounts owed to the Trusts and

18   "plan assets" as defined in the Trust Agreements.  Trustees of Bricklayers & Allied

19   Craftworkers Local 13 Defined Contribution Pension Trust for Southern Nevada v.

20   Marbella Flooring, Inc., No. 2:11-cv-00510-GMN-PAL, 2011 WL 6026613, at *11

21   (D. Nev. Dec. 2, 2011).

22          27.    C.H. Stone and Defendant Dean are jointly and severally liable to the

23   Trusts in the amounts of $87,824.84 for contributions, $17,564.96 for liquidated

24   damages, $40,316.37 for interest accruing through June 9, 2014, and $19,411.00 for

25   audit costs.

26          28.    Pursuant to the Master Agreement and 29 U.S.C. § 1132(g)(2)(D), C.H.

27   Stone is liable to the Trustees for their reasonable attorneys' fees and costs incurred

28

PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

824356.DOC

in this action. Defendant Dean also is jointly and severally liable to the Trustees for all attorneys' fees owed by C.H. Stone pursuant to 29 U. S.C. § 1132(g)(2)(D) because that amount also is a "plan asset" as defined by the Trust Agreements.

29.   Pursuant to the Master Agreement and 29 U.S.C. § 1132(g)(1), Defendant Dean owes the Trustees their reasonable attorneys' fees and costs incurred in this action, the amounts of which shall be determined by post-judgment motion and an application to tax costs.

30.   Judgment shall be entered in favor of the Trustees and against C.H. Stone and Defendant Dean, jointly and severally, consistent herewith.

Dated:   6/5/14   .   _____
UNITED STATES DISTRICT JUDGE

Submitted on June 4, 2014, by

LAQUER URBAN CLIFFORD & HODGE LLP

By:   /S/ Brian Ray Hodge
   BRIANRAY HODGE
   MARIJA KRISTICH DECKER
   MICHAEL Y. JUNG
Counsel for Plaintiffs Trustees of the Southern
California Pipe Trades Health and Welfare Trust
Fund, et al.